IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 09–cv–02542–REB–MJW

AIM HIGH!, INC., a Colorado corporation,
1 DOMAIN SOURCE, LTD, a Colorado Limited Liability Company,
KAIM CHIGH, LLC, a Missouri Limited Liability Company,
VINCENT S. HAMM, an individual, and
KAREN HAMM, an individual,

    Plaintiffs,

v.

HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation,

    Defendant.

## ORDER CONCERNING CROSS MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following: (1) **Defendant Hartford Fire Insurance Company's Motion for Summary Judgment and Brief in Support** [#15][1] filed June 14, 2010; (2) **Plaintiffs' Cross Motion for Partial Summary Judgment and Memorandum Brief in Support Thereof** [#17] filed July 8, 2010; (3) **Plaintiffs' Second Cross Motion for Partial Summary Judgment and Memorandum in Support Thereof** [#30] filed September 20, 2010; and (4) **Defendant's Motion To Strike Plaintiffs' Supplemental Exhibit and First Supplemental Expert Witness Disclosure** [#33] filed October 11, 2010. These motions generated responses

---

[1] "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[#16, #19, 32, & 35], and replies [#18, #23, 34, & 41]. I grant the defendant's motion for summary judgment, deny the plaintiffs' motions for summary judgment, and deny the motion to strike as moot.[2]

## I. JURISDICTION & CONTROLLING LAW

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity). The plaintiff asserts claims under the law of the State of Colorado. Thus, Colorado law controls the resolution of the substantive issues in this diversity case. ***Erie Railroad Co. v. Tompkins***, 304 U.S. 64, 78 (1938); ***Royal Maccabees Life Insurance Co. v. Choren***, 393 F.3d 1175, 1180 (10th Cir. 2005). Federal law controls procedural issues. ***See, e.g., Sims v. Great American Life Ins. Co.***, 469 F.3d 870, 877 (10th Cir. 2006).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) and (d). *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III. FACTS

This case arises from defendant Hartford Fire Insurance Company's denial of insurance coverage to the plaintiffs on a claim for coverage asserted by the plaintiffs. The insurance policy in question is a business liability insurance policy purchased by some of the plaintiffs from Hartford. *Hartford's motion for summary judgment* [#15], Exhibit A-3 [#15-3 to #15-5]. The plaintiffs' claim for coverage under the policy is based on a lawsuit filed against the plaintiffs by Registry Systems International, Ltd.

### A. THE RSI LAWSUIT

On March 10, 2008, Registry Systems International, Ltd. (RSI) filed a lawsuit naming as defendants each of the plaintiffs in the above captioned case. *Registry Systems International Ltd. v. Aim High!, Inc., et al.*, United States District Court for the District of Colorado, Civil Action No. 08-cv-00495-PAB-MJW (RSI Suit). After he was

served with a summons and the complaint in the RSI Suit, plaintiff Vincent Hamm, a principal of plaintiff Aim High!, Inc., sought from Hartford a defense in the RSI Suit and indemnity for any liability established in the RSI Suit.  Vincent Hamm sought coverage on behalf of himself and the other plaintiffs in this case.  Hartford denied coverage for the RSI Suit.  *Plaintiffs' cross motion for partial summary judgment* [#17], Exhibit 1 (Hamm Affidavit), Exhibit B.  In the above-captioned case, the plaintiffs assert claims against Hartford for breach of contract, and bad faith breach of insurance contract, claiming that Hartford is obligated to provide coverage to each of the plaintiffs with regard to the RSI Suit.  Hartford seeks summary judgment on both fo the plaintiffs' claims.  The plaintiffs seek summary judgment on their breach of contract claim.

In the RSI Suit, RSI asserts claims for breach of contract, conversion, deceptive trade practices, tortious interference with prospective business advantage, breach of fiduciary duty, and unjust enrichment.  The complaint in the RSI Suit includes repeated allegations that the defendants in the RSI Suit, the plaintiffs in this case, knew the facts but repeatedly and knowingly made false statements about the facts to others. *Hartford's motion for summary judgment* [#15], Exhibit A-1 (RSI Complaint), ¶¶ 12 - 16, 23, 24, 29, 38, 39 - 41, 43, 52, 53, 55, 62, 65, 66.  Read as a whole, the complaint in the RSI Suit demonstrates that all of the claims asserted by RSI in the RSI Suit are based on allegations that the defendants in the RSI Suit made numerous false representations, and took a variety of actions based on false representations, when the defendants knew that the representations in question were false.

B. THE HARTFORD POLICY

The Hartford policy (the Policy) in question is shown in Exhibit A-3 to Hartford's motion for summary judgment [#15].[3] The Policy contains the following relevant provisions.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

*Policy* [#15-3], ¶ A.1.a.

> This insurance applies:
>
> * * * *
>
> (2) to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*Policy* [#15-3], ¶ A.1.b.

> The policy defines "personal and advertising injury," in relevant part, as follows:
>
> Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

*Policy* [#15-5], ¶ G.17.d. The plaintiffs contend that they are entitled to coverage under this provision for the claims asserted against the plaintiffs in the RSI Suit. In their second cross motion for partial summary judgment [#30], the plaintiffs assert that they also are entitled to coverage under a Technology Services Coverage endorsement that is part of the policy. *Second cross motion for summary judgment* [#30], Exhibit 5. The

---

[3] Exhibit A-3, the Policy, is broken into three sections in the court's CM/ECF system, [#15-3, #15-4, and #15-5]. When citing specific policy provisions, I cite to the docket number that contains that specific provision.

5

endorsement grants coverage for "personal and advertising injury" arising out of "technology services" performed by the insured for others and defines "technology services" to include the following:

> a. Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems hardware, devices or components;
>
> b. Integration of computer systems;
>
> c. Administration, management, or operation of another party's computer facilities;
>
> d. Manufacture, sale, licensing, distribution or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components; and
>
> e. Design or development of: code, software or programming.

*Second cross motion for summary judgment* [#30], Exhibit 5, ¶ 2. Aim High contends that it performed such services for RSI.

The Policy contains also an exclusion of coverage to which Hartford refers as the knowledge of falsity exclusion. As relevant here, the knowledge of falsity provision provides:

> This insurance does not apply to:
>
> \* \* \* \*
>
> p. Personal and Advertising Injury
>
> (1) "Personal and advertising injury" [a]rising out of oral, written, or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

*Policy* [#15-4], ¶ B.1. p. (1). Hartford relies on the knowledge of falsity exclusion as one basis for its contention that it is not obligated to provide coverage to the plaintiffs for the claims asserted in the RSI Suit.

## III.  ANALYSIS

### A.  INTERPRETATION OF INSURANCE CONTRACTS

This case hinges on an interpretation of the Policy.  In this diversity action, Colorado law provides the principles by which the Policy must be interpreted.  ***Leprino Foods Co. v. Factory Mut. Ins. Co.***, 453 F.3d 1281, 1287 (10th Cir. 2006).  Under Colorado law, insurance contracts are to be construed in accordance with the general laws of contracts.  ***Federal Deposit Ins. Corp. v. American Casualty Co.***, 843 P.2d 1285, 1289 (Colo. 1992); ***Marez v. Dairyland Ins. Co.***, 638 P.2d 286, 288 - 289 (Colo. 1981), **overruled on otr. grounds**, ***Friedland v. Travelers Indem. Co.***, 105 P.3d 639, 642-643 (Colo. 2005).  An insurance contract must be interpreted according to the plain and ordinary meaning of its language.  ***Kellogg v. Metro. Life Ins. Co.***, 549 F.3d 818, 829 (10th Cir. 2008); ***Chacon v. American Family Mut. Ins. Co.***, 788 P.2d 748, 750 (Colo. 1990).  When the language used in a contract is plain and its meaning is clear, the agreement must be enforced as written.  ***In re May,*** 756 P.2d 362, 368 (Colo. 1998); ***Fire Ins. Exch. v. Rael by Rael***, 895 P.2d 1139, 1142 (Colo. App. 1995).

Courts should be wary of rewriting contract provisions and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced within the contract itself.  ***See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.***, 466 F.3d 893, 902 (10th Cir. 2006) (noting that courts should not rewrite insurance policy provisions that are clear and unambiguous) (citations omitted); ***Cyprus Amax Materials Co. v. Lexington Ins. Co.***, 74 P.3d 294, 299 (Colo. 2003) (courts should give the words contained in an insurance policy their plain and ordinary meaning).  Courts may neither add provisions to extend coverage beyond that contracted for, nor

delete provisions to limit coverage. *Cyprus Amax*, 74 P.3d at 299. When interpreting a policy's provisions, a court's construction "must be fair, natural, and reasonable rather than strained and strictly technical." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo.App. 2007) (*citing Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999)).

When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden or proving that a particular loss falls within an exclusion in the contract. *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). If a limitation or exclusion in an insurance contract is unambiguous, then that limitation or exclusion must be enforced. *Id*.

In the context of a dispute concerning an insurer's duty to defend against a claim asserted against its insured in a civil suit, Colorado applies the "complaint rule" also known as the "eight corners rule." The allegations of the relevant complaint, together with the language of the relevant insurance policy, provide the bases for evaluating whether an insurer has a duty to defend. *Lopez v. American Family Mut. Ins. Co.*, 148 P.2d 438, 439 (Colo. App. 2006); *Cotter v. American Empire Sur. Lines, Ins. Co.*, 90 P.3d 814 (Colo. 2004). An insurer's duty to defend arises when the complaint against the insured "alleges any facts that might fall within the coverage of the policy." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." *Id*. at 1089. "Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a

liability covered by the policy." *Id*. "Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Id*. (internal quotations, citations, and footnotes omitted). "When all of the elements of a claim covered by a policy are alleged, an insurer has a duty to defend its insured, even if a claim is not labeled according to the terms used in an insurance policy. ***Thompson v. Maryland Cas. Co.***, 84 P.3d 496, 502 (Colo. 2004).

In response to Hartford's motion for summary judgment, the plaintiffs argue, *inter alia*, that certain exceptions to Colorado's complaint rule are applicable to this case and, applying those exceptions, the facts show that the plaintiffs are entitled to coverage. I have reviewed the plaintiffs' argument on this point and the cases they cite, primarily ***Pompa v. American Family Mut. Ins. Co.***, 520 F.3d 1139 (10th Cir. 2008) and ***Apartment Inv. & Mgmt. Co. . Nutmeg Ins. Co.***, 593 F.3d 1188 (10th Cir. 2010). I conclude that those narrow exceptions are not applicable in this case.

### B.  APPLICABILITY OF KNOWLEDGE OF FALSITY EXCLUSION - BREACH OF CONTRACT CLAIM

In ***Thompson***, the Colorado Supreme Court examined a knowledge of falsity exclusion that is essentially identical to the knowledge of falsity exclusion at issue here. The exclusion provision at issue in ***Thompson*** provided that coverage is excluded for claims "arising out of oral or written publication of material, if done by or at the direction of insured with knowledge of its falsity." ***Thompson***, 84 P.3d at 499 n. 2. The plaintiff in ***Thompson*** sought coverage for a civil claim asserted against Thompson which claim

included factual allegations that the court read to allege the elements of a claim of disparagement of services. *Id.* at 507. The insurance policy provided coverage for a claim of disparagement of services. The **Thompson** court held, however, that the knowledge of falsity exclusion in the policy was applicable and the insurer did not have a duty to defend against the claim. Although a disparagement claim does not require proof that the defendant knew that the disparaging statements were false, the civil claim against Thompson included allegations that Thompson knew that the statements he allegedly made were false. The complaint against Thompson alleged that the key statement at issue was false and was contrary to the express and implied terms of pervious settlement agreement to which Thompson was a party. Further, a fraud claim asserted against Thompson, and based on the same facts, included allegations that Thompson's actions were "intentional" and "attended by circumstances of fraud." **Thompson**, 84 P.3d at 508. The court concluded that the insurer did not have a duty to cover Thompson or to provide a defense to the suit against Thompson because, reading the complaint against Thompson as a whole, the claims against Thompson included allegations that Thompson knew that the disparaging statement in question was false. *Id*. The allegations of knowing falsity, the court concluded, made the knowledge of falsity exclusion applicable. *Id*. at 507 - 508.

    The same analysis is applicable in this case. The complaint in the RSI Suit includes repeated allegations that the defendants in the RSI Suit, the plaintiffs in this case, knew the facts but repeatedly and knowingly made false statements about the facts to others. *RSI Complaint*, ¶¶ 12 - 16, 23, 24, 29, 38, 39 - 41, 43, 52, 53, 55, 62, 65, 66. Read as a whole, all of the claims asserted by RSI in the RSI Suit are based on allegations that the defendants in the RSI Suit made numerous false representations,

and took a variety of actions based on false representations, when the defendants knew that the representations in question were false. Under the Hartford policy at issue here, coverage is excluded for claims arising out of "oral, written, or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity." *Policy* [#15-4], ¶ B.1. p. (1). Given the pervasive allegations of knowing falsity in the RSI suit, I conclude that the knowing falsity exclusion in the Policy is applicable. Hartford is not obligated to provide a defense in the RSI Suit or to indemnity any of the plaintiffs in this case for any liability that may be established in the RSI Suit.

Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude that no reasonable fact finder could find for the plaintiffs on their breach of contract claim. Hartford is entitled to summary judgment on the plaintiffs' breach of contract claim.[4]

## C. BAD FAITH BREACH OF INSURANCE CONTRACT CLAIM

To establish a claim for bad faith breach of insurance contract, the plaintiffs must show that 1) Hartford acted unreasonably, and with knowledge or reckless disregard of the unreasonableness, in disclaiming a duty to defend and to indemnify the plaintiffs in the RSI Suit; 2) the plaintiffs sustained damages; and 3) the plaintiffs' damages were caused by Hartford's unreasonable disclaimer of coverage. **See Goodson v. Am. Std. Ins. Co.**, 89 P.3d 409, 414 (Colo. 2004); **Pham v. State Farm Mut. Auto. Ins. Co.**, 70 P.3d 567, 572 (Colo. App. 2003). An insurance bad faith claim is not limited to an insurance company's decision to grant or deny a claim. Rather, bad faith also can

---

[4] In their motions, the parties address also their positions about which persons and entities are insured under the Policy. Because I conclude that the policy does not provide coverage for the claims asserted in the RSI Suit, I decline to address the now moot issue of which persons and entities are insured under the Policy.

11

include an insurer's unreasonable refusal to investigate a claim and to gather facts relevant to the claim.  ***Travelers Ins. Co. v. Savio***, 706 P.2d 1258, 1274 n. 20 (Colo. 1985).

In this case, it is undisputed that Vincent Hamm was served with the complaint in the RSI Suit sometime in March 2008, and shortly thereafter he sent a copy of the complaint in the RSI Suit to his insurance agent, requesting defense and indemnity from Hartford.  *Plaintiffs' cross motion for partial summary judgment* [#17], Exhibit 1 (V. Hamm Affidavit), ¶¶ 14 - 15.  Hartford acknowledged receipt of the RSI Suit in a letter dated April 21, 2008, and Hartford denied coverage for the RSI Suit in a letter dated June 10, 2008.  *Id*., ¶¶ 16 - 17; *Plaintiffs' cross motion for partial summary judgment* [#17], Exhibit 1 (Hamm Affidavit), Exhibit B.  Vincent Hamm, on behalf of himself and the other plaintiffs, requested on three occasions that Hartford reconsider its decision to deny coverage.  *Plaintiffs' cross motion for partial summary judgment* [#17], pp. 4 - 5 & exhibits cited.  Hartford did not respond to two of those requests, and Hartford reiterated its denial of coverage in response to the third request.  *Id*.  The plaintiffs notified Hartford of certain court proceedings in the RSI Suit, but Hartford refused to attend those proceedings, based on its prior decision to deny coverage.  In response to Hartford's motion for summary judgment on the bad faith claim, the plaintiffs argue that Hartford's hasty denial of coverage, its refusal to participate in settlement discussions, its failure to conduct further evaluation of its coverage determination, its failure to make its coverage determination in a timely and impartial manner, and its failure timely to respond to the plaintiffs' claim communications (apparently referring to the plaintiffs' request to Hartford to reconsider its denial of coverage) all show that Hartford acted in bad faith.

Under Colorado law, Hartford was obligated to review the complaint in the RSI Suit and the terms of the Policy to make a coverage determination. Hartford's letter to Aim High and Vincent Hamm outlining the bases for Hartford's denial of coverage demonstrates a detailed analysis of these two documents as the primary basis for Hartford's denial of coverage. *Plaintiffs' cross motion for partial summary judgment* [#17], Exhibit 1 (Hamm Affidavit), Exhibit B. Given that information, Hartford determined properly that the claims asserted in the RSI Suit were excluded from coverage under the Policy. That reasonable determination cannot for the basis for a bad faith claim. Nothing in the record tends to show that Hartford did not act reasonably promptly in making this determination.

With the denial of coverage established properly, Hartford's subsequent actions do not tend to show that Hartford acted unreasonably, and with knowledge or reckless disregard of the unreasonableness, when it persisted in disclaiming a duty to defend after its initial denial of coverage. It was not unreasonable for Hartford to refuse to attend court proceedings in the RSI Suit, after Hartford reasonably determined that the claims in that suit are excluded from coverage under the Policy. The plaintiffs have not shown that, in their requests for reconsideration addressed to Hartford, they provided Hartford with any relevant additional information that made the initial denial of coverage unreasonable. In this context, Hartford's failure to respond to the plaintiffs' requests for reconsideration cannot be said to be unreasonable.

Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude that no reasonable fact finder could find for the plaintiffs on their bad faith breach of insurance contract claim. Hartford is entitled to summary judgment on the plaintiffs' bad faith breach of insurance contract claim.

13

## IV. CONCLUSION & ORDERS

Having reviewed the briefs and the evidence submitted by the parties as well as the applicable law, I conclude that there are no disputed issues of material fact in this case. Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude that no reasonable fact finder could find for the plaintiffs on their breach of contract claim or on their bad faith breach of insurance contract claim. Therefore, the defendant, Hartford Fire Insurance Company, is entitled to summary judgment on both of the plaintiffs' claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant Hartford Fire Insurance Company's Motion for Summary Judgment and Brief in Support** [#15] filed June 14, 2010, is **GRANTED**;

2. That the **Plaintiffs' Cross Motion for Partial Summary Judgment and Memorandum Brief in Support Thereof** [#17] filed July 8, 2010, is **DENIED**;

3. That the **Plaintiffs' Second Cross Motion for Partial Summary Judgment and Memorandum in Support Thereof** [#30] filed September 20, 2010, is **DENIED**;

4. That the **Defendant's Motion To Strike Plaintiffs' Supplemental Exhibit and First Supplemental Expert Witness Disclosure** [#33] filed October 11, 2010, is **DENIED** as moot;

5. That **JUDGMENT SHALL ENTER** in favor of the defendant, Hartford Fire Insurance Company, a Connecticut Corporation, and against the plaintiffs, Aim High!, Inc., a Colorado corporation, 1 Domain Source, Ltd, a Colorado limited liability company, Kaim Chigh, LLC, a Missouri limited liability company, Vincent S. Hamm, an individual, and Karen Hamm, an individual;

6. That each of the claims for relief asserted by the plaintiffs in their complaint [#2] are **DISMISSED** with prejudice;

7. That the defendant is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

8. That the Trial Preparation Conference currently set for December 3, 2010, at 9:00 a.m., and the trial currently set to begin on December 13, 2010, at 8:30 a.m., both are **VACATED**; and

9. That this case is **CLOSED**.

Dated December 2, 2010, at Denver, Colorado.

                                        **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge